## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

City of Chicago, City and County of Denver
Ans Pima County,

        Plaintiffs,

    v.

United States Department of Homeland Security;
Kristi Noem, in her official capacity as Secretary of
the United States Department of Homeland Security;
United States Federal Emergency Management
Agency; and David Richardson, in his official
capacity as Acting Administrator of the United
States Federal Emergency Management Agency,

        Defendants.

Case No.: 1:25-cv-05463

### DECLARATION OF NICOLE DOHENY

I, Nicole Doheny, declare as follows:

1.     I am a resident of the City and County of Denver (hereinafter "Denver") in the State of Colorado. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.     I currently serve as Chief Financial Officer for the City and County of Denver. Denver is the capital city of Colorado and the state's largest city with a population of 715,522 according to 2020 census data. I have held this position since October of 2023. Before my appointment as Chief Financial Officer, I held various senior positions at Ernst & Young Infrastructure Advisors, LLC, Including Senior Managing Director, Senior Vice President, and Vice President. I also served as an Assistant Vice President in Public Infrastructure Finance. In my

role as Chief Financial Officer for the City and County of Denver I oversee the City and County of Denver's finances and financial operations encompassing eight divisions within the Department of Finance: Assessment, Treasury (including the Motor Vehicle section), Risk Management, Office of the Controller, Cash and Capital Funding, Budget and Management Office, Capital Planning and Programming, and Real Estate.

3.      As the Chief Financial Officer, I manage the office responsible for developing, implementing, and managing Denver's annual budget and financial planning processes. I serve as a liaison and subject matter expert on the responsible and transparent use of public funds and all related policy matters. I have built and currently manage an executive team of one Deputy Chief Financial Officer and eight division directors. I also manage the City's overall budget of about $4.5B, of which $1.8B is general fund.

4.      In late 2022, Denver began receiving a significant number of migrants and asylum seekers. Many of the migrants received in Denver arrived on busses sent by the State of Texas in protest of DHS's release policy. Between 2022 and 2024, Denver received more than 40,000 migrants in total. In response, Denver declared a state of emergency in December 2022 and began providing shelter, food, services, and transportation to protect the recent arrivals from severe weather and to meet their immediate needs for health and safety.

5.      Denver spent more than $94M in local, state, and federal funds to provide services to these new arrivals since December 2022. This total includes approximately $52M of city money for which Denver has not, and does not expect, to receive reimbursement from any other source, and $24M for which Denver was promised, but has not received, reimbursement under the SSP Grants.

## SSP Grants

6.      Denver received approximately $32 million dollars in direct Shelter and Services Program (SSP) awards.

7.      The Federal Emergency Management Agency (FEMA) issued its first grant to Denver under the FY2023 SSP Allocation in June 2023, award number EMW-2023-SP-05093 ("2023 SSP-A Grant"), with an upward revision in September 2023, awarding a total of $9,009,328.23. FEMA has disbursed $7,960,404.69 to Denver under this grant. There is an outstanding draw request under this grant for the remaining $1,048,923.31.

8.      FEMA issued its second grant to Denver under the FY2024 SSP-A in April 2024, Award Number EMW-2024-SP-05084 ("2024 SSP-A Grant"). FEMA later revised this award upwards for a total award of $10,770,059.50.

9.      FEMA issued a third grant to Denver through a competitive bid process under the FY 2024 SSP-C Grant in September 2024, award number EMW-2024-SP-05204 ("2024 SSP-C Grant") awarding $12,670,592.00.

10.      This Declaration refers to the three grants awarded to Denver, collectively, as the "Denver SSP Grants."

11.      FEMA issued each of the Denver SSP Grants with a funding freeze on the full amount of the award, which means that Denver was required to submit detailed cost breakdown and justification information to FEMA, as enumerated in the relevant grant's budget, for pre-approval before it could submit draw requests enumerated in the relevant grant's budget. Under the terms and conditions of each of the grants, Denver was required to actually expend the money in accordance with the approved budgets before it could submit requests for reimbursement, or draw requests, from FEMA.

12.     Denver employees submitted all budget amendments and draw requests under the Denver SSP Grants through an online grant management portal used by FEMA, colloquially known as FEMA Go.

The 2023 SSP Grant

13.     Denver submitted several budget amendments under the 2023 SSP Grant between September 2023 and December 2024, including an amendment to waive the 10% cap placed on transportation and sheltering; an amendment to reflect corresponding changes to the budget when the waiver was approved; and two additional amendments to provide further budget details. With each budget amendment submission, Denver provided additional information to FEMA to justify allocating portions of the award to four different types of services: food, labor, shelter, and transportation. Each of these amendments was approved by FEMA by an Amendment Memo, stating: "The change to your grant was reviewed and is hereby approved as specified below.  All other terms and conditions of this grant shall remain unchanged."

14.     Denver submitted three draw requests under the 2023 SSP Grant. First, on September 6, 2024, Denver submitted a payment request for $7,617,071.83, based on the budget amendment submissions that had been approved to date. The request attached documentation including an A-number worksheet and summary spreadsheets and proof of payment for costs incurred for labor, food, shelter, and transportation. This request was approved, and payment made, on or about September 10, 2024.

15.     Second, on September 17, 2024, Denver submitted an additional draw request under the 2023 SSP Grant for $343,332.86. The request attached documentation including an A-number worksheet and summary spreadsheets and proof of payment for costs incurred for labor,

food, shelter, and transportation. This request was approved, and payment made, on or about October 4, 2024.

16.     Finally, on January 23, 2025, Denver submitted a draw request for $1,039,200.69, the full amount remaining under the 2023 SSP Grant. The request attached documentation including an A-number worksheet and summary spreadsheets and proof of payment for costs incurred for labor, food, shelter, and transportation. To date, FEMA has not responded to that drawdown request.

The 2024 SSP-A Grant

17.     When FEMA issued the 2024 SSP-A Grant, in July 2024, the initial award amount was $4,852,467. However, on December 20, 2024, Denver submitted a request for a budget amendment to both approve its shelter and food costs for drawdown, and to seek an increase of the award amount.

18.     To support this budget amendment, Denver submitted summary spreadsheets, proof of purchase orders, and proof of payment for food and shelter costs; a management and administrative summary spreadsheet, invoices, proof of payment, and narrative to explain the administrative costs incurred; an A-number worksheet; a copy of an A-number and release date waiver received from FEMA; and a cover letter projecting the total amount of migrants expected during the performance period and how that justified an award increase.

19.     On February 5, 2025, FEMA approved Denver's requested budget amendment, and increased the total award amount to $10,770,068.50. The Amendment Memo approving the amendment stated: "The change to your grant was reviewed and is hereby approved as specified below. All other terms and conditions of this grant shall remain unchanged."

20.     That same day, Denver submitted a draw request for $10,458,865.65 which was the total amount of food and shelter service costs in the recently approved budget amendment. The request attached documentation including an A-number worksheet and summary spreadsheets and proof of payment for costs incurred for food and shelter under the recently approved budget. The draw request did not request reimbursement costs for management or administrative costs.

21.     To date, FEMA has not responded to Denver's draw request under the 2024 SSP-A Grant.

The 2024 SSP-C Grant

22.     On January 27, 2025, Denver provided FEMA with a draft budget amendment for the 2024 SSP-C Grant.

23.     On January 31, 2025, a representative from FEMA sent Denver a note with two final edits and indicated that once those were made, the amendment was sufficient and should be submitted in the grant portal, FEMA GO.

24.     On February 14, 2025, Denver submitted the final budget amendment request.

25.     To date, FEMA has not responded to Denver's requested budget amendment under the 2024 SSP-C Grant. Pursuant to the terms and conditions of the grant, Denver was unable to submit a draw request in FEMA Go for reimbursement for costs incurred under the 2024 SSP-C Grant while the budget amendment was pending.

**The Letters and Denver's Response**

26.     On or about March 12, 2025, an employee under my supervision received a letter titled "Remedy for Noncompliance Letter, Shelter and Services Program (SSP)," dated March 11. That letter is attached hereto as Exhibit 1.

27.     On or about April 1, 2025, an employee under my supervision received a letter titled "Termination Notice: Shelter and Services Program Grant Award," dated April 1. That letter is attached hereto as Exhibit 2.

28.     On or about April 9, 2025, a contractor retained by Denver to manage the SSP grants logged into the FEMA Go online portal, and discovered that none of the Denver SSP Grants were visible on FEMA Go.

29.     On April 9, 2025, a Denver employee acting at my direction provided a response to the letters from FEMA dated March 11, 2025, and April 1, 2025. The response letter stated that Denver had fully complied with the terms and conditions of the grants, that it had previously submitted detailed information with the draw down requests on the 2023 SSP Grant and the 2024 SSP-A Grant, although that information had now been deleted from the portal. It also included final documentation and payment requests for the outstanding portions of the 2024 SSP-A Grant and the documentation for the 2024 SSP-C Grant.

30.     On or about April 24, 2025, an employee under my supervision received an email providing SSP award closeout instructions pursuant to the April 1 Letter, which directed Denver to submit closeout documentation via email in lieu of FEMA Go.

### Harm to Denver

31.     Denver is already facing difficult budgetary decisions without the potential loss of federal funds. Currently, Denver is facing a $50M budgetary shortfall in 2025, and a projected $200M shortfall in 2026 as a result of decreasing tax revenues due in part to inflation and national economic uncertainty.

32.     Denver has instituted a hiring freeze and most Denver employees will each take furlough days in 2025 as cost-savings measure. Program cuts and eliminations as well as layoffs

are likely to be necessary for 2026. The 2026 budget process is currently underway and final decisions are not yet known, but the budget will have to be reduced.

33.     Denver now risks carrying an additional $24M in costs for which it was entitled to reimbursement from FEMA pursuant to the grant terms and conditions governing the Denver SSP Grants. The threat of losing this money means that Denver's leadership must make hard choices, including whether to cut City services, lay off additional workers, or eliminate additional public programs. For example, an additional $24 million shortfall is roughly equal to 240 employees' annual salaries, or four percent merit increases for Career Service employees, or the amount the City has budgeted to assist residents through the Temporary Rental and Utility Assistance in 2025. The confusion and uncertainty created by the potential refusal to reimburse Denver pursuant to its SSP Grant agreements inhibits Denver's leadership's efforts to weigh these hard choices and is already having an impact on Denver's budget planning for 2026. The potential harm from loss of federal funding exacerbates Denver's budget planning difficulties because short-term cuts in services or delays in projects may result in long-term effects that reduce the efficacy of services and increase the total cost of any delayed project—even if the funding is later replaced.


I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.


Executed on June 18, 2025, at Denver, Colorado.



_____
Nicole Doheny

# EXHIBIT 1



**U.S. Department of Homeland Security**
Washington, DC  20472

March 11, 2025

Dan Fechter
Denver, City & County of
201 W Colfax Ave
Dept 1109 C/O Dan Fechter
Denver, Co 80202

Re:     Remedy for Noncompliance Letter, Shelter and Services Program (SSP)

      Grant Number: EMW-2023-SP-05093
      Period of Performance: March 1, 2023 – September 30, 2025
      Award amount: $9,009,328.00

      Grant Number: EMW-2024-SP-05084
      Period of Performance: October 1, 2023 – September 30, 2026
      Award amount: $10,770,059.50

      Grant Number: EMW-2024-SP-05204
      Period of Performance: October 1, 2023 – September 30, 2026
      Award amount: $12,670,592.00

Dear Dan Fechter:

The purpose of this letter is to notify you that DHS/FEMA is temporarily withholding payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a) and is instituting specific conditions on your award pursuant to 2 C.F.R. § 200.208.

**Findings**
The Department of Homeland Security has significant concerns that SSP funding is going to entities engaged in or facilitating illegal activities. The Department is concerned that entities receiving payment under this program may be guilty of encouraging or inducing an alien to come to, enter, or reside in the United States in violation of law, 8 U.S.C. § 1324(a)(1)(A)(iv); transporting or moving illegal aliens, *id*. § 1324(a)(1)(A)(ii); harboring, concealing, or shielding from detection illegal aliens, *id*. § 1324(a)(1)(A)(iii); or applicable conspiracy, aiding or abetting, or attempt liability respecting these statutes.

DHS/FEMA is required to administer its grant awards so as to ensure that federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution,

1

applicable federal statutes, and regulations. 2 C.F.R. § 200.300(a). The terms and conditions of the award allow the Department to institute appropriate remedies for noncompliance which include temporarily withholding payments or suspending or terminating the award for a failure to comply with the conditions of the award or applicable federal statutes. See 2 C.F.R. §§ 200.208; 200.340; and 200.339(a).

**Remedy Action(s) and Specific Condition(s)**
Non-federal entities receiving financial assistance from DHS/FEMA are required to comply with requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, Notice of Funding Opportunities, and policies. Throughout the award lifecycle or even after an award has been closed, DHS/FEMA may discover potential or actual noncompliance on the part of a recipient or subrecipient. This potential or actual noncompliance may be discovered through routine monitoring, audits, closeout, or reporting from various sources. In the case of any potential or actual noncompliance, DHS/FEMA may place special conditions on an award per 2 C.F.R. § 200.208 and § 200.339, DHS/FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R. § 200.339, or it may do both.

Based on the concerns described above, DHS/FEMA will conduct additional monitoring and review of your award(s) as permitted by the terms and conditions of the award(s) to ensure compliance with all terms and conditions of your award(s). During this time, payments under the grant award(s) will be temporarily held. Further, you are not permitted to incur any additional costs under the grant until notified further by DHS/FEMA.

To assist DHS/FEMA in conducting this review, please respond within 30 days with the following information that your organization has not already submitted to DHS/FEMA:

1. All documents regarding the aliens with whom your organization and your subrecipients and contracts interacted with in carrying out the scope of your SSP award, including their names and contact information; and a detailed and descriptive list of specific services provided, and proof of provision of these services; or
2. A written statement that your organization has already submitted all of the information identified in No. 1, above, to DHS/FEMA.

Additionally, to ensure compliance with all applicable federal laws and regulations in the execution of your SSP award, FEMA will be imposing an additional special condition that requires you, and the executive officers of any subrecipient or contractor that receives funding under the award, to sign an affidavit attesting that you and they have not participated in, and have no knowledge or suspicion that anyone in your or their organizations participated in, any crime cognizable under 8 U.S.C. §§ 1324(a)(1)(A)(iv); 1324(a)(1)(A)(ii); or 1324(a)(1)(A)(iii). Additional details regarding this new requirement will be forthcoming shortly. Upon the conclusion of that monitoring, FEMA will notify you of the results and any other remedies for noncompliance or specific conditions, as appropriate.

**Opportunity to Appeal**
Your organization has the right to appeal this action within 60 days of the date of this letter. The appeal must include the following information:

1. Grant number(s).
2. Recipient name.
3. A written explanation, on your organization's letterhead, explaining why you believe FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a), or to prohibit your organization from incurring additional costs under the grant, is not correct.
4. Copies of any documents or statements that support your position that FEMA's decision to temporarily withhold payments to your organization for the grant award(s) named above, pursuant to 2 C.F.R. § 200.339(a) is not correct.

Written appeals should be sent directly to FEMA-SSP@fema.dhs.gov.

The FEMA Grant Programs Directorate is available to respond to any questions you may have. Please send all information and communications regarding this notification to FEMA-SSP@fema.dhs.gov.

Sincerely,

Cameron Hamilton
Senior Official Performing the Duties of the
Administrator

**EXHIBIT 2**

**U.S. Department of Homeland Security**
Washington, DC 20472

 FEMA

April 1, 2025

Dan Fechter
Denver, City & County of
201 W Colfax Ave
Dept 1109 C/O Dan Fechter
Denver, CO 80202

Re:     Remedy for Noncompliance Letter, Shelter and Services Program (SSP)

       Grant Number: EMW-2023-SP-05093
       Award amount: $9,009,328.00

       Grant Number: EMW-2024-SP-05084
       Award amount: $10,770,059.50

       Grant Number: EMW-2024-SP-05204
       Award amount: $12,670,592.00

Dear Dan Fechter:

This letter serves as official notice that the Department of Homeland Security (DHS)/Federal
Emergency Management Agency (FEMA) is terminating your Shelter and Services Program (SSP)
grant awards identified above, effective immediately. DHS/FEMA is making this termination
pursuant to the terms and conditions of the grant awards. These terms and conditions include the
SSP Notice of Funding Opportunity (NOFO) that applies to your grant and 2 C.F.R. § 200.340(a)(2)
(2020), which authorizes DHS/FEMA to terminate your awards "to the greatest extent authorized by
law, if an award no longer effectuates the program goals or agency priorities."

Your agency received the grant awards identified above to carry out the purposes of the SSP
identified in the awards' respective NOFOs. The Department, consistent with President Trump's
direction, is focused on advancing the essential mission of enforcing immigration laws and securing
the border. Consequently, grant programs that support, or have the potential to support, illegal
immigration through funding illegal activities or support for illegal aliens that is not consistent with
DHS's enforcement focus do not effectuate the agency's current priorities. The previous agency
priorities under the FYs 2023 and 2024 SSP were to provide funding to non-federal entities to
provide shelter, food, transportation, acute medical care, and personal hygiene supplies for
individuals released from DHS short-term holding facilities. The individuals receiving these services
often have no legal status and are in the United States unlawfully, such as those awaiting removal
proceedings. This, in turn, provides support for illegal aliens and is not consistent with DHS's
current priorities. For these reasons, DHS/FEMA is terminating your awards.

In accordance with the terms of your awards, including 2 C.F.R. §§ 200.344-345 (2020), you must complete all closeout procedures. This includes, among other things, submitting all financial, performance, and other required reports within 120 calendar days from the date of this letter and promptly refunding any funding paid to date that exceed the amount set forth in your final federal financial report. FEMA previously issued a Remedy of Noncompliance Letter on March 11, 2025, informing you that you were not permitted to incur any additional costs under the awards until further notice from DHS/FEMA. This means that, during the closeout process, your final federal financial report must include all allowable costs incurred before the date of the Remedy of Noncompliance Letter but must not include costs incurred after the date of that Remedy of Noncompliance Letter.

FEMA will review all closeout documentation in accordance with 2 C.F.R. § 200.344. As part of its review, FEMA will determine the final allowable costs for your awards. This will include evaluating whether all submitted costs incurred before the date of the Remedy of Noncompliance Letter are necessary, allocable, and reasonable. FEMA will notify you of the final allowable costs for the awards and, if the payments made exceed the final allowable costs, you will need to promptly refund the difference. If, on the other hand, FEMA determines that the total allowable costs exceed the amount paid to date, then FEMA will make a final payment for that difference. FEMA will close the awards when it determines that all administrative actions and required work have been completed. Closeout will not affect DHS/FEMA's ability to later disallow costs and recover funds for the grant awards based on any later post-closeout audit or review.

If you wish to object to the termination of this award, you may challenge the termination in writing and provide any information or documentation relevant to your challenge. You must submit any written objections no later than 30 days of this letter. There will be no other opportunity to appeal this action to Department of Homeland Security.

The FEMA Grant Programs Directorate is available to respond to any questions you may have. Please send all information and communications regarding this notification to FEMA-SSP@fema.dhs.gov.

Sincerely,

Cameron Hamilton
Senior Official Performing the Duties of the
Administrator