# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| City of Chicago; | |
| City and County of Denver; and | |
| Pima County, | |
| *Plaintiffs,* vs. | |
| United States Department of Homeland Security; | |
| Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; | Case No. 25-cv-5463 |
| United States Federal Emergency Management Agency; and | Hon. Matthew F. Kennelly |
| David Robinson, in his official capacity as Acting Administrator of the Federal Emergency Management Agency, | |
| *Defendants.* | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION
## FOR A PRELIMINARY INJUNCTION

Defendants' opposition ("Opp.") to Plaintiffs' motion for a preliminary injunction ("Mot.") barely tries to defend their conduct on the merits. Nor could they: After FEMA's Administrator complained that "Congress should have never passed bills … asking FEMA to do this work," Defendants de-obligated all SSP grants. Defendants then initiated a pretextual "investigation" into whether grantees committed crimes by helping destitute migrants whom Defendants released into the country. Failing to await the results of this investigation, Defendants terminated all SSP grants based on internal directives to cease funding "sanctuary jurisdictions" or programs that "touch in any way on immigration." Defendants communicated this decision in form letters making clear that they disagree with the policies that Congress and Defendants themselves identified in creating SSP—reasoning that would allow agencies to terminate grants on a whim, pulling the rug out from under grantees that expended enormous resources in fulfilling program goals.

Rather than defend this conduct, Defendants offer a wide array of procedural objections to Plaintiffs' claims. Those objections each fail for the reasons described below. Taken together, Defendants' objections would preclude Plaintiffs from pursuing **any** claim under the Constitution or APA. Defendants could then indefinitely continue violating regulations requiring them to resolve within 30 days Plaintiffs' reimbursement requests—some of which Defendants pre-approved seven months ago. Only this Court may award equitable relief stopping Defendants from continuing to violate the law. Plaintiffs respectfully request that the Court do so.

## I.      This Court Has Jurisdiction.

Plaintiffs' opening brief ("Mem.") showed that the Tucker Act does not apply, citing this Court's rejection of the same defense in *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959 (N.D. Ill. 2025) ("*CWIT*"). Mem. at 12-15. Defendants largely ignore Plaintiffs' points and ignore *CWIT* entirely. Defendants instead base their defense on misconceptions about Plaintiffs' claims.

1

First, Defendants argue that grants are the "source" of Plaintiffs' claims because Plaintiffs "have no colorable claim to any funding absent the grant[s]." Opp. at 13. This argument conflates what gives Plaintiffs standing—that they are grantees—with the constitutional and statutory rights that Plaintiffs seek to vindicate. True, Plaintiffs' claims "implicate" their grants; Plaintiffs "would have no basis to pursue [their] claims" otherwise. *CWIT*, 778 F. Supp. 3d at 982. But Plaintiffs' constitutional and statutory rights "exist independent" of the grants. *Id.* And even if Defendants were right that some of Plaintiffs' claims lack merit, Opp. at 14, that would not "divest" the Court of jurisdiction. *Columbus Reg'l Hosp. v. FEMA*, 708 F.3d 893, 897 (7th Cir. 2013).

Second, Defendants argue that Plaintiffs seek "the contractual remedy of specific performance" by requesting "an order requiring the government to *pay* outstanding reimbursement requests and to reinstate their SSP grants in order to pay future reimbursement requests." Opp. at 14. That is not what Plaintiffs request. Rather, Plaintiffs ask that Defendants "process pending and future requests for reimbursement … in accordance with 2 C.F.R. § 200.305(b)(3)." Mot. at 1. Plaintiffs also seek to enjoin Defendants from freezing SSP funding and terminating the program for the reasons identified in the March 11 and April 1 Letters, *id.* at 2, challenging the manner in which Defendants acted and the reasoning they provided. These requests do not necessarily require Defendants to pay money if they follow proper procedures. Even if they did, that "'is not a sufficient reason to characterize the relief as 'money damages.'" *CWIT*, 778 F. Supp. 3d at 982. And Defendants do not dispute that the Court of Federal Claims lacks authority to compel Defendants to follow their regulations or proper procedures. *See* Mem. at 14-15 (citing cases).

Even accepting Defendants' characterization of Plaintiffs' requests, "a demand for full payment under a grant-in-aid program" seeks statutory "specific performance," not contractual "damages." *Columbus*, 708 F.3d at 896. The Seventh Circuit thus held that a district court had

jurisdiction over a grantee's claim for "money *as the entitlement* under a grant program," regardless of whether the grant "would continue" into the "future." *Id.* at 896-97. *Compare Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 903 F.2d 445, 452 (7th Cir. 1990) (retaining jurisdiction over APA claim but not over a claim seeking "specific performance of a contract").

Finally, Defendants cite *Department of Education v. California*, 145 S. Ct. 966 (2025). It is "distinguishable." *CWIT*, 778 F. Supp. 3d at 982. The *California* district court enforced "'a contractual obligation to pay money'" in an APA-only suit that "depended on the terms and conditions of the grant awards." *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, 145 F.4th 39, 51-52 (1st Cir. 2025). Again, Plaintiffs seek to enforce the Constitution and APA, not a contract. Nor do Plaintiffs' claims depend on grant terms, and for good reason: the form March 11 and April 1 Letters—which froze all funding and terminated all grants based on changed policies—confirm that Defendants did not base their actions "on individualized assessments of any particular grant terms and conditions." *N.Y. v. Trump*, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025). And Defendants' reliance (at 2, 22) on grant terms "as a defense" does not "deprive the court of jurisdiction." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see Thakur v. Trump*, 2025 WL 1734471, at *20 (N.D. Cal. June 23, 2025). Otherwise, the federal government could always defeat district-court jurisdiction simply by asserting a contractual defense.

To be sure, some courts have applied *California* differently to particular facts. *See* Opp. at 15-16. Plaintiffs submit, however, that this Court in *CWIT* and the many other decisions cited in Plaintiffs' briefs correctly held that *California* does not preclude jurisdiction in lawsuits like this.

## II.     Plaintiffs Will Likely Prevail On Their Constitutional and Ultra Vires Claims.

Defendants violated the separation of powers and acted ultra vires by freezing SSP funding and terminating the program based on Defendants' disagreement with Congress's objectives,

usurping Congress's exclusive spending authority. Based on the same facts, a federal court found FEMA's actions unlawful. *N.Y. v. Trump*, 769 F. Supp. 3d 119 (D.R.I. Mar. 6, 2025). Defendants ignore that decision, and the arguments they offer do not justify a different result here.

**A.      Congress Did Not Give Defendants Discretion To Terminate SSP Funding.**

Defendants argue that the appropriations acts permitted their actions. Opp. at 26-27. The acts provided a lump-sum appropriation of about $34 billion but earmarked 4% of that amount for specified purposes through nine "*Provided*" clauses. *See* Pub. L. No. 117-328, 136 Stat. 4459, 4729-30; Pub. L. No. 118-47, 138 Stat. 460, 597-58. Seven of those clauses state that funds "not to exceed" specified amounts are for the earmarked purpose, *id.*, giving DHS discretion to spend less than the appropriated amounts. The other two clauses do not provide that discretion, directing that $1.45 billion "shall be transferred to [FEMA] to support sheltering and related activities provided by non-Federal entities … in support of relieving overcrowding in [DHS] short-term holding facilities." *Id.* Confirming that this difference matters, Congress included a "not to exceed" direction in the very same SSP appropriations clauses but limited that discretion to amounts that FEMA could spend on "administrative costs." *Id.* Congress thus made clear that Defendants must spend $1.45 billion, minus administrative costs, for the earmarked purpose. *See* U.S. Gov't Accountability Off., B-230162, 67 Comp. Ge. 401 (1988) (interpreting a lump-sum appropriation listing an earmark alongside otherwise-discretionary items to make the earmark mandatory) (linked to at Supp. Decl. of Lucy Prather ("Supp. Prather Decl.") ¶ 3).

In addressing the same 2024 appropriations act at issue here, this Court interpreted a provision stating that an agency "may" spend funds for an identified purpose to mean that the agency was "not required to" do so. *CWIT*, 2025 WL 1331743, at *6 (N.D. Ill. May 7, 2025). The

4

SSP appropriations do not say that FEMA "may" spend the funds for sheltering and related activities, even though the same act confirms that Congress knows how to do so when it wishes.

Defendants next argue that Congress did not require FEMA to use the appropriated funds for SSP. Opp. at 27-28. Even if that were correct, it would be irrelevant. As Defendants concede, the time to obligate funds under the 2023 and 2024 appropriations acts has expired. *Id.* at 7. Defendants thus can spend the money that Congress appropriated only by doing so under SSP.

In any case, DHS acknowledged that the 2023 appropriations act funded "a new grant program, SSP," Opp., Ex. 1 at 2, and FEMA's then-Acting Administrator complained that "Congress should have never passed bills in 2023 and 2024 asking FEMA to do this work." Prather Decl. ¶ 12; *see also* Dkt. 33-10 at 2 ("Congress directed CBP and FEMA to establish a new Shelter and Services Program."). Defendants were correct. Explanatory statements accompanying the 2023 and 2024 appropriations acts observed that they funded the "Shelter and Services Program." 168 Cong. Rec. S8553-01, S8557; 170 Cong. Rec. H1501-01, H1810; *see* 136 Stat. at 4462 (referencing explanatory statement); 138 Stat. at 461 (same).[1]

As Defendants observe, agencies typically have discretion in how to "structure" a grant program. Opp. at 27. But agencies may spend money "only to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). FEMA thus could spend appropriations only "to support sheltering and related activities provided by non-Federal entities." 136 Stat. at 4730.

Finally, Defendants note that the appropriations acts did not fund "specific" grantees. Opp. at 28. That does not matter. Plaintiffs challenge the SSP-wide funding freeze and termination, not

---

[1] Although courts generally eschew legislative history in deciding if an agency properly spent a "'lump-sum'" appropriation, *CWIT*, 2025 WL 1331743, at *7-8, Plaintiffs cite Congress's explanatory statements only to confirm what the appropriations acts themselves indicated in earmarking funds for "sheltering and related activities." *See United States v. Will*, 449 U.S. 200, 222-24 (1980); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 138, 143-44, 147-49 (2d Cir. 2002); *Ashki v. INS*, 233 F.3d 913, 918 n.1 (6th Cir. 2000).

grant-specific conduct. This Court thus correctly found a separation-of-powers violation in *CWIT* even though Congress did not identify specific grantees. 778 F. Supp. 3d at 990-92.

### B. *Dalton* Is Inapplicable.

Citing *Dalton v. Specter*, 511 U.S. 462 (1994), Defendants argue that Count I fails because it alleges only violations of appropriations acts. Opp. at 23. In fact, Count I alleges that Defendants lack any Article II or statutory authority to support their actions. Compl. ¶¶ 193-99. And as this Court observed, *Dalton* permits constitutional challenges to executive actions taken "in the absence of any authority." *CWIT*, 2025 WL 1331743, at *5. Because no law allows Defendants to "withhold or terminate [SSP] grant funds," "*Dalton* is inapposite." *Id.*

Moreover, *Dalton* does not preclude separation-of-powers claims asserting that the executive acted in excess of statutory authority where "specific allegations" show that the executive refused to implement a law based on "policy preferences," creating a "conflict" with Congress "of constitutional dimensions." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023); *Glob. Health Council v. Trump*, 2025 WL 2326021, at *25-28 (D.C. Cir. Aug. 13, 2025) (Pan, J., dissenting). The Seventh Circuit thus held that the Attorney General "exceeded the authority delegated by Congress" and "violated the … separation of powers" based on the same conduct. *City of Chi. v. Barr*, 961 F.3d 882, 931 (7th Cir. 2020). Here, the April 1 Letter's characterization of the "previous agency priorities" with which Defendants disagree mirrors the priorities identified by Congress in funding SSP. *See* Mem. at 17. But as then-Judge Kavanaugh stated, "federal agencies may not ignore statutory mandates … because of [a] policy disagreement with Congress." *In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013). *Dalton* thus does not bar Count I.

6

C.      **The APA Does Not Displace Plaintiffs' Constitutional And Ultra Vires Claims.**

Defendants argue that equitable relief is unavailable under Counts I and III because the APA or Tucker Act provide "a path of judicial review." Opp. at 23-25. The Tucker Act does not apply here for the reasons explained above. The APA does not displace Plaintiffs' claims either.

"[E]quitable relief 'has long been recognized as the proper means for preventing entities from acting unconstitutionally.'" *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *accord Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (courts may "enjoin unconstitutional actions by … federal officers"). Plaintiffs may seek this relief through a "'private right of action directly under the Constitution to challenge governmental action under … separation-of-powers principles.'" *Free Enter. Fund*, 561 U.S. at 491 n.2; *see Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge").

Courts "'will not construe a statute to displace courts' traditional equitable authority absent the clearest command.'" *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). The APA does not displace constitutional review. On the contrary, the Seventh Circuit and this Court have awarded equitable relief to remedy separation-of-powers violations by agency officials. *City of Chi. v. Sessions*, 888 F.3d 272 (7th Cir. 2018); *CWIT*, 778 F. Supp. 3d 959; *see also Trudeau v. FTC*, 456 F.3d 178, 190 & n.22 (D.C. Cir. 2006). Similarly, "[n]othing" in the APA "repeal[s] … *ultra vires* actions." *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988); *accord Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated and remanded as moot sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021). *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41-44 (1st Cir. 2002).

Non-statutory review is particularly important if, as Defendants maintain, Plaintiffs cannot challenge Defendants' actions under the APA. Congress "expects the courts to grant relief when an executive agency violates" statutes, so there is a "strong presumption that Congress intends

7

judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670, 681 (1986). And Congress "must be clear" if it "intends to preclude judicial review of constitutional claims." *Webster v. Doe*, 486 U.S. 592, 603 (1988). "Nothing in the APA evinces such an intent." *Juliana v. United States*, 947 F.3d 1159, 1167 (9th Cir. 2020). Counts I and III thus "may proceed independently of the review procedures mandated by the APA." *Id.* at 1168.

*Nuclear Regulatory Commission v. Texas*, 145 S. Ct. 1762 (2025), is not to the contrary. In that case, objectors to a nuclear-storage facility failed to intervene in agency proceedings licensing the facility under the Atomic Energy Act and thus were statutorily barred from seeking judicial review. The Supreme Court held that the objectors could not evade this statutory bar by asserting an ultra vires claim alleging that the agency exceeded its authority under the Atomic Energy Act. *Id.* at 1776. *Nuclear Regulatory Commission* did not involve a constitutional claim and thus does not impact Count I. And unlike *Nuclear Regulatory Commission*, Plaintiffs are not using an ultra vires claim to circumvent their failure to comply with a regulatory scheme. If Plaintiffs cannot challenge Defendants' conduct under the APA, then ultra vires review is necessary to remedy Defendants' violations of the appropriations acts and Impoundment Control Act.[2]

### III. Plaintiffs Will Likely Prevail On Their APA Claims.

### A. The Challenged Actions Are Not Committed To Agency Discretion.

The APA does not apply to actions that are "committed to agency discretion." 5 U.S.C. § 701(a)(2). To "honor the presumption of judicial review" under the APA, courts interpret section 701(a)(2) "'narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

---

[2] Defendants assert that Plaintiffs' ultra vires claim covers only a "one-month period." Opp. at 25 n.8. Defendants do not cite anything in support of that assertion, which is incorrect. *See* Compl. ¶ 207.

discretion.'" *Dep't of Commerce v. N.Y.*, 588 U.S. 752, 772 (2019). Defendants argue that this is such a rare case, citing *Lincoln v. Vigil*, 508 U.S. 182 (1993). Opp. at 16-17.

In *Lincoln*, Congress enacted a lump-sum appropriation that a federal agency used to establish a regional program promoting Native American children's health pursuant to statutes that authorized expenditures "for the benefit, care, and assistance of the Indians." 508 U.S. at 185. The Supreme Court held that the APA precluded review of the agency's decision to discontinue the regional program in favor of a national program because Congress did not "circumscribe agency discretion … by putting restrictions in the operative statutes." *Id.* at 193.

By contrast, the appropriations acts at issue here earmarked funds for a restricted purpose: "to support sheltering and related activities provided by non-Federal entities … in support of relieving overcrowding in [DHS] short-term holding facilities." 136 Stat. at 4730. *Compare Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, 2025 WL 1852762, at *14 (D.D.C. July 6, 2025) (agency could end court helpdesk because earmark required only a "Legal Orientation Program"). Moreover, the March 11 and April 1 Letters relied on federal regulations in freezing SSP funding and terminating grants. Guzman Decl., Exs. 1-2. These regulations "'cabin'" Defendants' discretion and provide "'judicially manageable standards'" to evaluate Defendants' actions. *Am. Pub. Health Ass'n*, 145 F.4th at 53; *see Thakur*, 2025 WL 1734471, at *17; *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 440, 468 (D.R.I. 2025).

**B.      The March 11 Letter's Funding Freeze Is A Final Agency Action.**

Our opening brief explained that the March 11 Letter's funding freeze is a final agency action, citing cases reviewing federal funding "pauses" under the APA. Mem. at 20. Since then, another court cited an "'emerging consensus'" that "'federal funding freezes'" are "final for the purposes of APA reviewability." *Wash. v. U.S. Dep't of Transp.*, 2025 WL 1742893, at *16 (W.D.

Wash. June 24, 2025). Ignoring this consensus, Defendants argue that the March 11 Letter is not final because Defendants may reimburse grantees after concluding their investigation. Opp. at 18.

The prospect that an agency "may revise" its decision based on new information "is a common characteristic of agency action" and does not make an "otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016). Indeed, if Defendants were right, they could evade APA review and continue violating 2 C.F.R. § 200.305(b)(3) indefinitely just by continuing their four-months-old-and-counting "investigation." But the March 11 Letter is titled "Remedy for Noncompliance." Guzman Decl., Ex. 1. As "the very name" of the letter "makes clear," Defendants' deliberation "is at an end." *Sackett v. E.P.A.*, 566 U.S. 120, 129 (2012).

Moreover, "in reviewing the record, a court is 'not required to exhibit a naiveté from which ordinary citizens are free.'" *N.Y. v. Trump*, 133 F.4th 51, 69 (1st Cir. 2025). The March 11 Letter postdated the de-obligation of all SSP awards as well as FEMA's then-Acting Administrator's statement that "this stops now." Prather Decl. ¶¶ 11-14 & Exs. 7-8. In short, the March 11 Letter merely announced a final agency action already taken 30+ days prior.

### C.     Plaintiffs Are Within The Zone Of Interests.

Defendants argue that Plaintiffs cannot base APA claims on violations of the Impoundment Control Act ("ICA") and appropriations acts because Plaintiffs fall outside the "zone of interests." Opp. at 19-21. The zone-of-interests test is "not 'especially demanding'"; plaintiffs "must only *arguably* fall within the zone of interests." *Cook Cnty. v. Wolf*, 962 F.3d 208, 219 (7th Cir. 2020). "Suit is foreclosed 'only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.*; *see FDA v. R. J. Reynolds Vapor Co.*, 145 S. Ct. 1984 (2025).

The ICA seeks to prevent the executive from impounding funds to advance its "policies and priorities at the expense of those decided by Congress." S. Rep. No. 93-688 (1974). Plaintiffs share a similar interest: to prevent Defendants' new policies from undermining congressional objectives in funding SSP. Defendants respond that the ICA does not demonstrate "intent to protect" local governments. Opp. at 19. But the zone-of-interests test does not require "'congressional purpose to benefit the would-be plaintiff.'" *Cook Cnty.*, 962 F.3d at 219.

Defendants also argue that "the ICA does not provide a private cause of action." Opp. at 20. That does not preclude "an APA challenge asserting that an agency action is contrary to law because it violates the ICA." *Or. Council for Humans. v. United States DOGE Serv.*, 2025 WL 2237478, at *23 (D. Or. Aug. 6, 2025). The APA's prohibition on agency actions that are contrary to "law" "refers to '*any* law'"—including the ICA. *Id.* Courts have thus repeatedly upheld contrary-to-law claims under the APA based on violations of the ICA. *Id.* (citing cases).

Plaintiffs fall within the appropriations acts' zone of interests too. The acts sought "to support sheltering and related activities provided by non-Federal entities." 136 Stat. at 4730. Joint explanatory statements noted that the funds were for "grants" to (among others) "local governments," 168 Cong. Rec. S8553-01, S8557-58, "to provide temporary shelter and other services to individuals released from DHS custody, helping to facilitate the safe, orderly, and humane release of asylum seekers and families." 170 Cong. Rec. H1501-01, H1810. Plaintiffs were thus among the acts' intended beneficiaries and fulfilled Congress's purpose. If Plaintiffs were not within the acts' zone of interests, seemingly "no entity" would be, and "no agency action taken" under the acts "could ever be challenged." *Cal. v. Trump*, 963 F.3d 926, 941-44 (9th Cir. 2020). That "conclusion is not tenable, and a result Congress surely did not intend." *Id.* at 944.

11

*Trump v. Sierra Club*, 140 S. Ct. 1 (2019), does not help Defendants. There, one agency transferred funds to another to build a border wall, relying on a law permitting transfers for military purposes. Environmental groups won an injunction stopping the transfers. The Supreme Court stayed the injunction in a one-paragraph order on its emergency docket. Although the Court did not explain its order, a dissent from the decision below stated that plaintiffs were outside the zone of interests because they alleged only "aesthetic, recreational, and generalized environmental interests that will be affected, not by the transfer of funds, but by the building of the border wall." *Sierra Club v. Trump*, 929 F.3d 670, 715 (9th Cir. 2019) (Smith, J., dissenting). The dissent observed that someone "who would have been entitled to the funds as originally appropriated" may be within the zone of interests. *Id.* In this case, Plaintiffs did receive funds under the appropriations acts, and Defendants' violations of those acts directly harmed Plaintiffs.[3]

### D. Defendants' Merits Arguments Fail.

Defendants observe that they may withhold payments "based on noncompliance with federal law" and terminate grants "under certain circumstances." Opp. at. 21-22. That is true generally, but the issue is whether Defendants complied with the APA in this case. They did not.

As for the funding freeze, Defendants ignore regulations requiring reimbursement within 30 days unless the agency "reasonably believes" that the request is "improper." 2 C.F.R. § 200.305(b)(3). Defendants instead suggest that they properly withheld reimbursement based on "noncompliance" "describe[d]" in the March 11 Letters. Opp. at 22. But the March 11 Letter neither identified noncompliance *by Plaintiffs* nor a "reasonable belief" that Plaintiffs' reimbursement requests were improper. *See* Mem. at 8, 21, 23-24.

---

[3] Defendants also argue that Plaintiffs' non-statutory claims fail the zone-of-interests test. Opp. at 25 n.6. That test does not apply to non-statutory claims, however, and Plaintiffs would fall within the separation of powers' zone of interests even if the test applied. *See Sierra Club*, 963 F.3d at 893-95.

As for the grant terminations, Defendants invoke a regulation permitting terminations "to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities." Opp. at 22 (citing 2 C.F.R. § 200.340(a)(2) (2020), recodified at § 200.340(a)(4)). Defendants suggest that Notices of Funding Opportunity "incorporated" section 200.340(a)(2), Opp. at 3, 22, but the Notices did not "clearly and unambiguously" do that. 2 C.F.R. § 200.340(b); *see id.* § 200.211(c)(1)(v) (2020). On the contrary, the Notices identified reasons for terminations, but a change in "program goals or agency priorities" is not among them. *E.g.*, Prather Decl., Ex. 4 at 41-42. Regardless, Defendants ignore decisions rejecting their position as well as evidence that section 200.340(a)(2) permits terminations only if the grantee is ineffective in advancing the program's goals. Mem. at 22-23; *see Or. Council*, 2025 WL 2237478, at *27. Section 200.340(a)(2) does not permit terminations based on priorities that agencies identify *after* awarding the grant.

Beyond this, Defendants largely ignore Plaintiffs' showing that Defendants acted arbitrarily and capriciously while violating procedural requirements. Mem. at 23-26. Far from identifying a reasoned basis to freeze SSP funding for seven months and counting, Defendants acknowledge that they did so out of concern that grantees "may" have violated 8 U.S.C. § 1324 by "encouraging" migrants to enter or stay in the country. Opp. at 4. Defendants offer zero evidence for that concern, which seemingly depends on the notion that grantees committed crimes by providing the services that Defendants requested via SSP. Nor do Defendants offer evidence that they considered Plaintiffs' reliance interests in expending enormous resources to provide services that Defendants requested and approved only for Defendants to withhold reimbursement.

## IV.     Plaintiffs Will Be Irreparably Harmed Absent a Preliminary Injunction.

Our opening brief identified three types of irreparable harm. Mem. at 27-29. First, as this Court held in *CWIT*, irreparable injury is presumed for violations of the separation of powers.

13

Defendants respond that they did not act unconstitutionally, but that is incorrect. *See supra* at 3-8.

Second, Defendants' de-obligation of SSP grants risks that Defendants will moot Plaintiffs' claims by transferring SSP funds to the Treasury Department or elsewhere. Defendants respond that they cannot spend the funds "on anything other than 'the objects for which the appropriations were made.'" Opp. at 7 (quoting 31 U.S.C. § 1301(a)). That is not comforting. Defendants are using 2025 SSP funds—appropriated to help migrants—to detain migrants at Alligator Alcatraz. Dkt. 35-1. That is a blatant violation of section 1301(a).

Defendants also note that appropriation accounts must remain "available for recording, adjusting, and liquidating obligations properly chargeable" for five years. 31 U.S.C. §§ 1552-53. The problem is that Defendants illegally *de-obligated* Plaintiffs' grants. *See* Mem. at 17; Comans Decl. ¶ 8. Defendants say that they "must" de-obligate grants that have been terminated. Opp. at 8. That is doubtful: Defendants de-obligated SSP grants nearly two months before they terminated the grants, and Defendants have not de-obligated other grants that they terminated. *See* Supp. Prather Decl. ¶¶ 4-14. Defendants could have cleared this up by submitting a declaration attesting that they will maintain Plaintiffs' funds for five years, but they did not. Given Defendants' actions, any doubt about the availability of Plaintiffs' funds should be construed against Defendants.

Third, Defendants' actions upend Plaintiffs' ability to budget. Ignoring cases accepting similar theories, Mem. at 28-29, Defendants respond that Plaintiffs' injuries are "speculative" because Plaintiffs did not identify "what employees and programs they must cut." Opp. at 11. Defendants cite no authority requiring Plaintiffs to do that. What matters is that Plaintiffs' budgetary processes require Plaintiffs to make those decisions before this case could be resolved.

Noting that Chicago closed its migrant-only shelters, Defendants also assert that Plaintiffs' budget uncertainty is lessened because Plaintiffs seek reimbursement for completed work. Opp. at

11-12. If anything, the opposite is true: "It is so obvious that it almost need not be stated that when money is obligated and therefore expected (**particularly money that has been spent and reimbursement is sought**) and is not paid as promised, harm follows—debt is incurred, debt is unpaid, essential health and safety services stop, and budgets are upended." *N.Y.*, 769 F. Supp. 3d at 142 (emphasis added). Regardless, Plaintiffs continue to spend money on shelters that serve, among others, migrants and—but for Defendants' actions—could have requested reimbursement for services provided through September 2026. *See, e.g.*, Guzman Decl., Ex. 1 at 1.

## V.      The Public Interest And The Equities Favor A Preliminary Injunction.

The public interest and equities favor preliminary relief because Defendants violated the Constitution, forcing Plaintiffs to fire employees and/or cut services that residents depend on. *See* Mem. at 29. Defendants respond by citing *Maryland v. King*, 567 U.S. 1301 (2012), where Chief Justice Roberts stayed a judgment invalidating a statute and overturning a rape conviction because the full Court would likely grant certiorari and reverse. By contrast, rather than enjoin Defendants from "effectuating statutes," *id.* at 1303, Plaintiffs seek to enjoin Defendants from violating statutes and the Constitution. And Defendants offer only speculation that Plaintiffs—large governmental entities that frequently pay large judgments—could not pay any adverse judgment.

### CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated: August 15, 2025                    Respectfully Submitted,

Mary B. Richardson-Lowry,
Corporation Counsel of the City of Chicago

By: */s/ Lucy Prather*
Lucy Prather (lucy.prather@cityofchicago.org)
Rebecca Hirsch (rebecca.hirsch2@cityofchicago.org)
Chelsey Metcalf (chelsey.metcalf@cityofchicago.org)
Stephen Kane (stephen.kane@cityofchicago.org)

15

City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Tel: 312-744-4294
*Attorneys for Plaintiff City of Chicago*


LAURA CONOVER
PIMA COUNTY ATTORNEY

By: */s/ Bobby Yu*
Samuel E. Brown (sam.brown@pcao.pima.gov)
Bobby Yu (bobby.yu@pcao.pima.gov)
Kyle Johnson (kyle.johnson@pcao.pima.gov)
Pima County Attorney's Office, Civil Division
32 N. Stone, Suite 2100
Tucson, Arizona 85701
Tel: (520) 724-5700
*Attorneys for Plaintiff Pima County*

Katie McLoughlin
Acting City Attorney, City and County of
Denver

By: /s/ *Matthew J. Mulbarger*
Matthew J. Mulbarger
(matthew.mulbarger@denvergov.org)
Denver City Attorney's Office
201 W Colfax Avenue
Denver, CO 80202
Tel: 720-913-8050
*Attorneys for Plaintiff City and County of
Denver*

16